The petitioner, Reginald Ashley Taylor, filed this petition for a writ of mandamus directing the Honorable Alfred Bahakel, circuit judge for the Tenth Judicial Circuit, to dismiss the indictments against him. Taylor was indicted in 1993 for trafficking in lysergic acid diethylamide (LSD), for possessing marijuana, and for failing to affix stamps evidencing payment of the drugs and controlled substances excess tax. He filed a motion requesting production of all audio-taped statements allegedly made by him. Approximately one week before trial the state disclosed two audio-taped recordings. During trial, Detective Jeff Cooper testified that the confidential informant was wearing a recording device when he spoke with Taylor. This audiotape was not disclosed to Taylor before trial. Taylor moved for a mistrial, on the basis that the state failed to disclose the tape. Judge Bahakel granted the motion and declared a mistrial. Thereafter, Taylor moved to dismiss the indictments because, he alleged, the prosecutor's suppression of the audiotape was intentional. He also argued that the indictments should be dismissed because he had been denied his constitutional right to a speedy trial. Judge Bahakel denied the motion; this petition followed.
The Alabama Supreme Court has shown an increasing willingness to review pretrial allegations of double jeopardy violations by way of mandamus. Ex parte Roberts, 662 So.2d 229
(Ala. 1995). In Ex parte Ziglar, 669 So.2d 133, 135
(Ala. 1995), the Supreme Court stated:
 "We are satisfied that a criminal defendant with a double jeopardy defense should not be foreclosed from pretrial correction of a trial judge's erroneous denial of a plea of former jeopardy. Therefore, the appellate courts of this State will review double jeopardy claims properly presented by petitions for the writ of mandamus. Rule 21, Ala.R.App.P. This procedure will adequately protect the interest of a defendant, as emphasized in Abney [v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977)], so as to avoid the personal strain, public embarrassment, and expense of a subsequent criminal trial."
Allegations concerning the denial of a speedy trial have also been entertained in a mandamus petition. Ex parteCollins, 53 Ala.App. 577, 302 So.2d 551 (1974) (even though petitioner had adequate remedy at law, all the evidence pertaining to the issuance of the writ was before the court and nothing indicated likelihood of any additional evidence being offered to alter the factual situation).
 I
Taylor argues that any subsequent retrial is barred because, he says, the prosecutor's actions in failing to disclose the audiotape were intended to invoke a mistrial. The State argues that a retrial is not barred because the trial court specifically found, that the failure to disclose the tape was "through no fault of the prosecutor," and the record supports that finding. *Page 1056 
Generally, when an accused's request for a mistrial is granted, a subsequent retrial is not barred based on the principles of double jeopardy. United States v. Dinitz,424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976). See Brannon v.State, 549 So.2d 532, 536 (Ala.Cr.App. 1989), where we stated, "`a defendant may not use the principle of double jeopardy to relieve himself from the consequences of his voluntary choice.' Kinard v. State, 495 So.2d 705, 708
(Ala.Cr.App. 1986); Oliver v. State, 479 So.2d 1385,1390 (Ala.Cr.App. 1985)."
However, the United States Supreme Court recognized an exception to this rule in Oregon v. Kennedy,456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982). The Court, narrowing its earlier holding in United States v. Tateo,377 U.S. 463, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964), [1] redefined the standard to be used in evaluating whether a retrial is barred based on double jeopardy principles. The Court stated:
 "[A] standard that examines the intent of the prosecutor, though certainly not entirely free from practical difficulties, is a manageable standard to apply. It merely calls for the court to make a finding of fact. . . .
 "Prosecutorial conduct that might be viewed as harassment or overreaching, even if sufficient to justify a mistrial on defendant's motion, therefore, does not bar retrial absent intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. A defendant's motion for a mistrial constitutes `a deliberate election on his part to forgo his valued right to have his guilt or innocence determined before the first trier of fact.' United States v. Scott, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65 (1978). Where prosecutorial error even of a degree sufficient to warrant a mistrial has occurred, `[t]he important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.' United States v. Dinitz, supra, 424 U.S. [600], at 609, 96 S.Ct. [1075], at 1080[, 47 L.Ed.2d 267 (1976)]. Only where the governmental conduct in question is intended to `goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion."
456 U.S. at 675-76, 102 S.Ct. 2083.
As noted above, the conduct of the prosecutor must be "intended to `goad' the defendant into moving for a mistrial" before a retrial is barred on double jeopardy grounds. See Ex parteAdams, 669 So.2d 128 (Ala. 1995).
A transcript of the prior proceedings at which the motion for a mistrial was discussed is included with Taylor's mandamus petition. The record reflects that Taylor was tried with his codefendant Chad Brown. There is a lengthy discussion during Detective Cooper's testimony concerning the audiotape. The prosecutor stated that she did not know about the tape and that she believed that the police officers did not tell her about it because they did not think it would be useful — "you can't make out any voices or words." Judge Bahakel, when granting the motion for a mistrial, stated, "I don't really fault the prosecutors in this particular case; they're good attorneys, and I think they're diligent attorneys." We also note that codefendant Brown's attorney observed, "I tend to believe [the prosecutor] that they just got this tape, and it came out on the witness stand without Mr. Clark [Taylor's counsel] and I knowing anything about [it]." There is absolutely no evidence in the record that the prosecutor's actions were "intended to `goad' the defendant into moving for a mistrial." In fact, the prosecutor vigorously argued that a mistrial was not warranted in this case.
The state, in the alternative, contends that, if we were to find in the record an inference *Page 1057 
that the prosecutor intentionally provoked a mistrial, we should remand the case to the trial court for that court to conduct a jury trial on the issue. See Rule 15.4, Ala. R.Crim.P., which states: "(a) Determination of motions. A motion raising defenses or objections made before trial pursuant to this rule shall be determined before trial, unless the court for good cause orders that it be deferred for determination at the trial on the merits.
 "(b) Jury Trial. Unless a jury trial of an issue of fact raised by the motion is waived, such issue shall be tried by a jury if a jury trial is constitutionally required.
 "(c) Court Trial. All other issues of fact raised by the motion shall be determined by the court without a jury in such manner as the court may direct."
Taylor waived his right to a jury trial on this issue by not asserting this right when he filed the motion to dismiss.[2]
See Rule 15.2(c), which states that the "failure to present any objection or defense as provided in sections (a) and (b) constitutes a waiver thereof. . . ."[3]
We do not believe it is necessary to remand the case for the trial court to make findings of fact as to this issue. Its finding that the prosecutor did not intentionally goad Taylor into moving for a mistrial is already before us — in the record of the previous trial.
 II
Taylor next contends that his constitutional right to a speedy trial has been violated. The United States Supreme Court inBarker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182,33 L.Ed.2d 101 (1972), set out the following factors to be weighed in determining whether an accused has been denied the constitutional right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the accused's assertion of his right to a speedy trial, and (4) the degree of prejudice suffered by the accused due to the delay.
Length of Delay. Taylor was arrested in October 1992 and was tried initially in April 1998. His retrial, which was scheduled for June 1998, was continued on his own motion. "The right to a speedy trial is triggered when a warrant of arrest is issued." O'Barr v. State, 639 So.2d 533, 535
(Ala.Cr.App. 1993). In this case, more than five years had elapsed from the time of Taylor's arrest to the time he was first tried. This court in Howard v. State,678 So.2d 302 (Ala.Cr.App. 1996), held that a 29-month delay was presumptively prejudicial and thus triggered an inquiry into the remaining three factors articulated in Barker. Because of the length of the delay in this case, we will evaluate the remaining Barker factors.
Reasons for the Delays. Taylor does not include a copy of the case action summary sheet with the mandamus petition, thus, it is impossible for us to determine the precise reasons for the delay. However, the State's answer sheds light on our inquiry. The motions attached to the State's answer indicate that Taylor requested several continuances and that he, in fact, requested a continuance for his retrial.[4] There is absolutely no evidence in the exhibits furnished to this Court that any of the delay can be attributed solely *Page 1058 
to the State. "`Delays occasioned by the defendant or on his behalf are excluded from the [calculation of the] length of delay and are heavily counted against the defendant in applying the balancing test of Barker.'" Zumbado v.State, 615 So.2d 1223, 1234 (Ala.Cr.App. 1993), quotingMcCallum v. State, 407 So.2d 865, 868 (Ala.Cr.App. 1981).
Assertion of Right. Taylor did not assert his right to a speedy trial until June 1998, after his first trial resulted in a mistrial. As the United States Supreme Court stated inBarker, 407 U.S. at 532, 92 S.Ct. 2182, "we emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."
Prejudice Suffered by Accused. Our last inquiry is whether the accused has suffered any prejudice as a result of the delay in prosecution. Taylor has been out on bond for the entire period of the delay. However, he contends that he has been prejudiced because the confidential informant pursuant to whose information he was charged has died since Taylor's arrest. However, the State correctly points out that there is absolutely no indication in Taylor's petition as to when the informant died and Taylor has made no showing that the informant's death prejudiced him.
We hold that Taylor's right to a speedy trial has not been violated.
Before a mandamus may issue, the petitioner must establish a "clear legal right" to the relief sought. Taylor has not met this burden. Therefore, this petition is due to be denied.
PETITION DENIED.
McMILLAN, COBB, BROWN, and BASCHAB, JJ., concur.
[1] The Supreme Court noted in Oregon v. Kennedy
that its holding in Tateo implied that the standard to be used in evaluating whether a retrial is barred because of prosecutorial misconduct in the first trial was whether the prosecutor had exercised "bad faith" or had engaged in "harassment." The court in Oregon v. Kennedy stated that this standard was not a "manageable" standard.
[2] In Ex parte Adams, 669 So.2d 128 (Ala. 1995), the Alabama Supreme Court applied Rule 15.4. Adams had filed a motion to dismiss the charges against him based on a double jeopardy violation and requested that he be granted a jury trial on the issue whether the prosecutor's conduct was intentional. The trial court denied the request and Adams filed a petition for a writ of mandamus. The Supreme Court, when granting the petition, stated, "a jury trial should have been granted to determine the factual issue of whether the prosecutor's conduct in the first trial was intentionally designed to provoke a mistrial."
[3] Rule 15.2 states, in part:
 "(a) Objections Which Must be Raised by Pre-trial Motion. Objections based on defects in the commencement of the proceedings or in the charge, other than lack of subject matter jurisdiction or failure to charge an offense, may be raised only by pre-trial motion as provided in Rule 15.3.
 "(b) All Objections and Defenses Included. The pre-trial motion shall include all objections and defenses then available to the defendant."
[4] One of the reasons he gave in support of his request for a continuance was that a continuance would allow him to file a petition for a writ of mandamus with this court. *Page 1059